IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Timothy M., | ) |
|     *Plaintiff*, | ) ) ) |
| | ) Case No. 3:21-cv-50237 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) |
| Acting Commissioner of Social Security,[1] | ) ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Timothy M. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his application for supplemental security income.[2] For the reasons set forth below, the Commissioner's decision is reversed and the case is remanded.

**I. Background**

Plaintiff was born with congenital hip dysplasia and Perthes disease[3] in both hips. R. 47, 379–80. In addition, Plaintiff has had multiple serious injuries, including a break in his thoracic spine in 2008, a broken collarbone in 2012, and an injury to his left knee in June 2018. R. 320, 344. Plaintiff was employed as a general labor contractor until late 2018, when the pain and stiffness in his right hip grew so severe that his limited functioning prevented him from working. R. 47, 330, 344–45, 442. An X-ray on February 9, 2019, showed severe asymmetric dysplastic changes of the right hip with flattening of the articular surface of the femoral head and acetabular

---

[1] Kilolo Kijakazi has been automatically substituted for Andrew M. Saul pursuant to Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 5.
[3] Perthes disease refers to "epiphysial osteonecrosis of the upper end of the femur." *Stedman's Medical Dictionary* 559 (28th ed. 2006).

1

molding. R. 353. On February 19, 2019, Plaintiff reported that he was experiencing constant deep pain in his right hip that hurt even when he was sitting down, as well as severe stiffness that made it difficult for him to get out of bed in the morning. R. 342. Plaintiff's prescription pain medication only partially helped. R. 342.

Plaintiff applied for supplemental security income on February 20, 2019, alleging a disability onset date of November 1, 2018. R. 67–68. At the time of the application, he was 39 years old. R. 67.

As part of the application process, Plaintiff underwent a consultative examination by K.P. Ramchandani on March 6, 2019. R. 364–66. Plaintiff reported that his pain ranged between 8/10 and 10/10 severity and that it was aggravated by, among other things, standing for 15 minutes and walking six to seven blocks on level ground unassisted. R. 365. Dr. Ramchandani noted that Plaintiff walked with a right limp, walked "gingerly" on his heels and toes, and had 4/5 strength in his right hip due to pain. R. 365.

On April 3, 2019, Plaintiff underwent an MRI of his right hip, which showed a right anterior superior extensive acetabular labral tear with a large perilabral cyst and adjacent superior acetabular chondral erosion. R. 437. The MRI also showed an acetabular labral tear in his left hip and degenerative disc disease in his lumbar spine. R. 437. On May 10, 2019, Plaintiff consulted with an orthopedic surgeon. R. 330. Plaintiff reported that his pain had been getting worse, up to 9/10 severity, and was always at least a 7/10, sharp in nature, and aggravated by walking. R. 330. On examination, Plaintiff's hip rotation was limited to 15 degrees internal and 15 degrees external, and he walked with an antalgic gait. R. 332. On May 24, 2019, the orthopedic surgeon ordered an image-guided right hip injection. R. 333. The injection took place on June 11, 2019. R. 355–56.

On July 5, 2019, Plaintiff's medical records were reviewed by Marion Panepinto, a state agency medical consultant, who found that Plaintiff could do light work, which included standing and/or walking for approximately six hours in an eight-hour workday. R. 75, 80. Accordingly, the disability examiner found that Plaintiff was not disabled. R. 80.

Plaintiff saw his orthopedic surgeon again on July 19, 2019, to discuss his right hip pain. R. 459. Plaintiff reported that the hip injection "helped take away 25% of the pain, but only for 12 hours." R. 459. A right total hip replacement was recommended. R. 463. Plaintiff was informed that "a hip replacement [wa]s not going to last him all of his life," but he accepted the "limited time span of a hip replacement and its consequences" because "he want[ed] to have a better quality of life." R. 463.

On September 5, 2019, Plaintiff underwent an attempted right total hip replacement surgery. R. 1098. The surgeon accidentally cut Plaintiff's femoral artery and had to abort the procedure due to Plaintiff's "sudden severe bleeding" and "compromised sterility." R. 1098. Plaintiff had to be hospitalized September 16–20, 2019, to surgically plug an arteriovenous fistula between his right femoral artery and vein. R. 1359. Plaintiff followed up with the vascular surgeon on September 24 and had to have his wound surgically opened, drained, cleaned, and closed with a Wound-Vac to treat a chronic seroma. R. 496, 1718–19. On November 27, 2019, the vascular surgeon told Plaintiff that his wound was "completely healed." R. 1592. Despite his catastrophic experience, Plaintiff told his primary care physician on December 3, 2019, that he still intended to have hip replacement surgery. R. 655.

Plaintiff began seeing a physical therapist for his back and hip problems in December 2019, but the COVID-19 pandemic prevented Plaintiff from attending beyond his sixth session in March 2020. R. 27, 552. Plaintiff still had a limp and reported pain in his low back and right hip that

3

increased to 8/10 severity after walking around the grocery store for 10 minutes. R. 551, 572. Plaintiff's goals for physical therapy included standing for more than 10 minutes and walking for 30 minutes to enable him to go shopping. R. 572.

On April 8, 2020, Victoria Dow, a second state agency medical consultant, reconsidered Plaintiff's application, evaluating some additional medical evidence but no evidence regarding Plaintiff's right hip surgery and complications. R. 28, 96. Dr. Dow agreed with Dr. Panepinto that Plaintiff could stand and/or walk for approximately six hours in an eight-hour workday. R. 91, 96. Accordingly, Plaintiff was again found not disabled. R. 96.

Plaintiff saw a vascular surgeon on August 6, 2020, reporting painful varicose veins in his right leg that had developed since his September 2019 surgeries. R. 698. The surgeon noted that Plaintiff's hip was "still bothering him quite a lot." R. 701. Compression stockings did not help with Plaintiff's varicose veins, so Plaintiff scheduled an angiogram and underwent a coil embolization in November 2020. R. 49, 1848.

A remote hearing on Plaintiff's application was held before an administrative law judge (ALJ) on December 14, 2020. R. 21. At the hearing, Plaintiff testified that he still required treatment for his surgical complications, still needed a hip replacement, and still suffered lasting pain from both afflictions, as well as continued difficulty standing and walking for even 15 minutes. R. 47–60.

The ALJ issued a written decision on January 13, 2021, finding that Plaintiff was not disabled under 42 U.S.C. § 1382c(a)(3)(A) and thus not entitled to benefits. R. 30. At step two of the inquiry, the ALJ found that Plaintiff had the severe impairments of "right hip dysplasia, Perthes disease; degenerative disc disease in thoracic and lumbar spine, arteriovenous fistula status post repair and wound vacuum-assisted closure (VAC), and right thoracic outlet syndrome." R. 23. At

4

step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 24. The ALJ then concluded that Plaintiff had the residual functional capacity (RFC) to perform light work with several restrictions, including a finding that Plaintiff "is able to stand/walk no more than 4 hours in a[n] 8-hour workday." R. 24–25. Based on hearing testimony from an independent vocational expert, the ALJ found at step four that Plaintiff could not return to his past relevant work as a construction worker or loader/unloader. R. 28–29. At step five, the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, such as garment sorter, packager, and laundry worker. R. 29–30.

After the Appeals Council denied Plaintiff's request for review on May 18, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff argues that (1) the ALJ ignored a line of evidence regarding Plaintiff's inability to have his right hip replaced, (2) the ALJ did not support Plaintiff's RFC with a medical opinion or sufficient analysis regarding his ability to stand and/or walk for four hours in an eight-hour workday and his need to change positions, and (3) the ALJ did not explain how he accounted for Plaintiff's leg swelling. The Court agrees that the ALJ did not adequately justify his RFC determination regarding Plaintiff's ability to stand and walk for four hours, and as a result, remand is required on that issue.

**RFC Limitations on Standing and Walking**

A claimant's RFC is the maximum work he can perform despite his physical and mental limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, No. 21-2130, 2022 WL 4126293, at *4 (7th Cir. Sept. 12, 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Plaintiff argues that the ALJ's RFC is unsupported by a medical opinion or adequate analysis, particularly challenging his conclusion that Plaintiff can stand and/or walk for four hours in an eight-hour workday. Pl.'s Mot. at 10–11, Dkt. 17. The Commissioner responds that the ALJ's RFC determination "rested on substantial objective evidence and reasoned analyses of medical opinions and plaintiff's subjective allegations." Def.'s Resp. at 3, Dkt. 20. The Court disagrees.

First, the Commissioner claims that the ALJ supported his RFC, specifically his finding that Plaintiff could stand and walk for four hours out of an eight-hour workday, on the opinions of Dr. Panepinto and Dr. Dow, who each opined that Plaintiff could stand and/or walk for *six* hours out of an eight-hour workday. R. 75, 91. However, the Court is not convinced that the ALJ relied on these opinions to support his finding, given that the ALJ recognized these opinions were out of date, based on incomplete evidence, and "of only partial persuasiveness." R. 28. The ALJ did not explain which parts were persuasive and which were not, but his RFC determination shows that he was obviously not persuaded by their six-hour standing and walking limitation. R. 28. And for good reason. The state agency medical consultants did not have records to show that by September 2019, Plaintiff's hip pain had become so severe that his orthopedic surgeon recommended a hip replacement, generally regarded as a treatment of last resort. *See* Arthritis and Hip Replacement Surgery, *WebMD* (June 6, 2022), https://www.webmd.com/arthritis/hip-replacement-surgery ("Hip replacement surgery is a procedure . . . done when all other treatment options have failed to provide adequate pain relief."); *see also William A. v. Saul*, No. 18 C 2098, 2019 WL 3857874, at *7 (N.D. Ill. Aug. 16, 2019) (claimant's scheduling of total hip replacement strongly suggested claimant suffered serious hip pain). The consultative examiner certainly did not know that the hip replacement was aborted and left Plaintiff with not only an unrepaired hip, but also vascular problems that required further surgeries as late as November 2020 and resulted in chronic leg

swelling and pain in addition to his preexisting hip pain. Thus, the state agency medical consultants lacked new and significant evidence that reasonably could have changed their opinions, and the ALJ could not have relied on those opinions as substantial evidence to support his RFC. *See Shelia M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021) (collecting cases involving "new and significant evidence that reasonably could have changed the state agency physician's opinion").

The Commissioner responds that "an ALJ is not 'required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" Def.'s Resp. at 5, Dkt. 20 (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). But here, the ALJ rejected the very opinions the Commissioner alleges he relied on, and the Commissioner does not identify any other medical opinion to support the conclusion that Plaintiff could stand and walk for up to four hours in an eight-hour workday. As a result, the required accurate and logical bridge from the evidence to the ALJ's conclusion is missing. *See Fly v. Colvin*, No. 3:14-CV-1840, 2015 WL 5124957, at *4 (N.D. Ind. Aug. 31, 2015) (where ALJ found state agency physician's opinion that claimant could stand for six hours only partially persuasive and no medical opinion stated claimant could stand for four hours, ALJ failed to build a logical bridge to his conclusion that claimant could stand for four hours); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("The problem is that we don't know what [the ALJ] thought. . . . [W]e do not know on what basis he decided that [the claimant] can stand for two hours at a time. No physician said that. . . . To suppose that [the claimant] could do so day after day on a factory floor borders on the fantastic, but in any event has no evidentiary basis that we can find.").

The Commissioner points to other evidence in the record that the ALJ summarized and opines that those records support the ALJ's four-hour standing and walking restriction. But

8

summarizing records and analyzing them are not the same thing. *Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015); *Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015). For example, the Commissioner points to medical findings of good hip alignment and full overall motor strength. Def.'s Resp. at 3, Dkt. 20. The Commissioner also cites consultative examiner Dr. Ramchandani's findings of Plaintiff's slightly reduced right hip strength; ability to walk unassisted, albeit with a limp; and ability to mount and dismount the examination table. *Id.* But the ALJ offered no explanation of how these findings support the ability to walk for four hours out of an eight-hour workday.[4] *See Tessa B. v. Saul*, No. 20 C 93, 2020 WL 6487189, at *2 (N.D. Ill. Nov. 4, 2020) (remanding based on failure to build logical bridge between medical opinion assigned no weight and conclusion that hip strength supported RFC limitation that claimant could stand and walk for six hours per day).

The Commissioner also argues that the ALJ relied on the fact that despite complications after an abortive right hip arthroplasty in September 2019, Plaintiff's surgical wound had completely healed two months later. How does this fact show that Plaintiff can stand and walk for four hours? The ALJ offered no explanation. No one opined that Plaintiff's ability to stand and walk was related to his surgical wound, and the state agency examiners did not even know about the surgery. It was Plaintiff's unresolved right hip pain that caused his orthopedic surgeon to recommend a total hip replacement, R. 463, a surgery that had still not been performed when the ALJ issued his opinion. R. 50. Citing to these findings without analysis does not create a logical bridge here. *See Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) ("It strains credulity to find

---

[4] Despite the Commissioner's contentions, on this record, the Court cannot tell if the ALJ factored these medical findings into his conclusion that Plaintiff could walk and stand for four hours a day on his severely impaired hip. *See* R. 26–28. However, Plaintiff remains a candidate for hip replacement despite these findings. R. 50, 655. Without further medical opinion, utilizing such medical findings could well constitute improper doctor playing. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

9

that a claimant who needed a hip replacement and had to sit while showering and shopping for groceries was capable of standing for six hours a day in a workplace.").[5] An ALJ's failure to "explain how he arrived at [his] conclusions . . . in itself is sufficient to warrant reversal of the ALJ's decision." *Briscoe*, 425 F.3d at 352 (citing SSR 96-8p, 1996 WL 374184, at *7). Even so, the Court "may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if [the Court] is satisfied that the ALJ 'buil[t] an accurate and logical bridge from the evidence to [his] conclusion.'" *Jarnutowski*, 2022 WL 4126293, at *4 (quoting *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018)). Here, the Court simply cannot trace the ALJ's reasoning. *See Briscoe*, 425 F.3d at 352–53.[6]

On remand, the ALJ must build an accurate and logical bridge explaining how, in light of the fact that Plaintiff had not yet had his hip replaced and in light of all of the other evidence in the record, Plaintiff can still stand and walk for four hours out of an eight-hour workday. The ALJ should strongly consider obtaining expert input on this issue given the outdated opinions of the state agency consultants regarding Plaintiff's ability to stand and walk. By remanding the case, the Court is not indicating that the ALJ should reach any particular result. Rather, the Court is remanding so the ALJ can explain his RFC findings as outlined in this opinion.

---

[5] The Commissioner also argues that Plaintiff's activities of daily living support the ALJ's four-hour limitation on standing and walking, referring to Plaintiff's physical therapy exercises and work in his basement. Def.'s Resp. at 3, 9, Dkt. 20 Once again, however, the ALJ provides no analysis of how these activities translate to a four-hour standing and walking limitation, in light of the fact that Plaintiff's right hip requires an as yet to be performed hip replacement. Nowhere in the decision does the ALJ state that these activities are similar to standing and walking for four hours out of an eight-hour day. More analysis is needed here.

[6] The Commissioner suggests that Plaintiff has nothing to complain about because the four-hour limitation is more restrictive than the six-hour limitation proposed by the state agency medical consultants. Def.'s Resp. at 9, Dkt. 20. This argument is nonsensical. Suppose a state agency doctor opined that a one-legged man could stand and walk for eight hours. Just because an ALJ adopted a six-hour limitation does that mean the Claimant has nothing to complain about. An ALJ's obligation to explain his reasoning applies whether or not his conclusions favor the claimant. SSR 96-8p, 1996 WL 374184, at *7; *Briscoe*, 425 F.3d at 352.

In light of the Court's remand, it need not address Plaintiff's remaining arguments. However, Plaintiff's counsel should raise all issues argued on appeal with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

Date: September 30, 2022        By: _____
                                    Lisa A. Jensen
                                    United States Magistrate Judge

11